**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CURTIS BRIDGES,** | ) | **CASE NO. 1:11CV2192** |
| | ) | |
| **Petitioner,** | ) | **JUDGE SOLOMON OLIVER, JR.** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **MAGGIE BRADSHAW, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Curtis Bridges ("Bridges"), challenges the constitutionality of his sentence in the case of *State v. Bridges*, Cuyahoga County Court of Common Pleas Case No. CR407434. Bridges, represented by counsel, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on October 14, 2011.  On December 8, 2011, Warden Maggie Bradshaw ("Respondent") filed her Return of Writ.  (Doc. No. 5.)  Bridges filed a Traverse on January 9, 2012.  (Doc. No. 6.)  For reasons set forth in detail below, it is recommended that Bridges' Petition be denied.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts from Bridges' 2009 re-sentencing hearing as follows:

> {¶ 2} Bridges was convicted of trafficking in cocaine in an amount exceeding 1,000 grams and possession of cocaine exceeding 1,000 grams, each with a major drug offender specification. He was originally sentenced to a mandatory term of ten years on each underlying count and to five years on the specification, to run consecutively. The total sentence was 25 years.
>
> {¶ 3} The conviction was affirmed on direct appeal in *State v. Bridges*, Cuyahoga App. No. 80171, 2002-Ohio-3771, appeal not allowed 97 Ohio St.3d 1484, 2002-Ohio-6866, 780 N.E.2d 287. Thereafter, Bridges filed a motion to vacate his

sentence because he was not advised of postrelease control. The trial court granted the motion, and the case proceeded to a *de novo* sentencing hearing.

{¶ 4} At the hearing, all parties agreed that the convictions for trafficking and possession should merge as allied offenses of similar import. The state elected to proceed on the drug trafficking count. The trial court sentenced Bridges to a mandatory prison term of ten years on said count, which was the same as the original sentence. However, the trial court imposed a consecutive ten-year prison term on the major drug offender specification, which was five more years than the original sentence on the specification. Bridges received a total sentence of 15 years.[1]

*State v. Bridges*, 2010 WL 5486840, *1, 2010-Ohio-6359 (Ohio App. 8th Dist. Dec. 23, 2010).

Prior to the 2009 re-sentencing, on January 23, 2004, Bridges filed a federal habeas action based upon the original conviction, which was denied on August 31, 2007.  (Doc. No. 5-6.)  In Bridges' previous federal habeas case, the district court set forth the facts as follows:

I. BACKGROUND
A. Events Leading to Bridges Arrest and Indictment

On May 11, 2001, Patrolman Jack Butcher ("Butcher") of the North Olmsted Police Department observed a Cadillac speeding and signaled the driver to pull over. *See Ohio v. Bridges*, Case No. 80171, slip op. 2 (Ohio Ct.App. July 25, 2002), attached as Ex. 12 to Def.'s Return of Writ, ECF No. 10.) Upon approaching the car, Butcher saw Bridges in the driver's seat and Co-Defendant Malika Poole ("Poole") in the passenger seat. Bridges told Butcher that the car was a rental, but he could not locate the rental contract. Bridges was also unable to produce a valid driver's license, but he did have an Ohio State identification card. Poole was likewise unable to produce either a driver's license or State ID. (*See id.*)

Butcher returned to his cruiser to check the vehicle's status and Bridges's driver license and warrant status. The check revealed that Bridges had a warrant for his arrest, that his driving status in Ohio was suspended, and that Poole's temporary Ohio driver's permit had expired. The dispatch center contacted Patrolman Chris Fox ("Fox") to respond to Butcher's location so that they could arrest Bridges on the warrant. Upon Fox's arrival, Butcher approached Bridges in the vehicle and advised him of what was happening. Butcher removed Bridges from the car, patted him down, and placed him in the back of the cruiser. (*See id.* at 3.)

Bridges asked Butcher if Poole could drive the car away, but Butcher said no because there was no valid rental agreement. Butcher then informed Bridges that he would be doing an inventory of the vehicle. The North Olmsted Police Department requires an inventory of all vehicles prior to being towed. Butcher and Fox performed an inventory of the vehicle and discovered a large quantity of cocaine. (*See id.* at 4.)

---

[1]Bridges' new sentence was actually a term of 20-years.  Ten years for trafficking and a consecutive ten years on the major drug offender specification.

2

On May 17, 2001, Bridges was indicted for one count of possession of cocaine in
an amount exceeding 1,000 grams, in violation of O.R.C. § 2925.11, and one
count of trafficking in cocaine in an amount exceeding 1,000 grams, in violation
of O.R.C. § 2925.03. Both of these counts are felonies of the first degree with
mandatory terms of incarceration of ten years. Additionally, violation of O.R.C. §
2925.11 included a Major Drug Offender's specification which allowed the
sentencing judge to run an additional one to ten years consecutively on the
underlying mandatory ten years. (*See id.* at 1, 3.)

B. Bridges's Suppression Hearing and Sentence

On May 31, 2001, June 13, 2001, and June 15, 2001, Bridges filed motions to
suppress, maintaining that all evidence relating to his arrest for possession and
trafficking cocaine should be excluded because Butcher lacked probable cause for
the initial stop, and the search exceeded the scope of an inventory search. An
evidentiary hearing on Bridges's motion to suppress was conducted on June 18,
2001. (*See id.* at 3, 4.) During the hearing, a counter supervisor from Alamo
Rental Car at Cleveland Hopkins Airport testified that the vehicle driven by
Bridges had been rented by a female named Beatrice Hunter. Pursuant to
company policy, no one other than Beatrice Hunter was authorized to drive the
rented car. Additionally, Butcher testified that he saw Bridges's car traveling at a
speed greater than the posted 60 mph. He testified that he activated his laser gun
on Bridges's car and received a reading of 76 mph. He took a second reading and
it was 64 mph. Butcher testified that Bridges slowed down once he saw the
cruiser. Butcher also testified that neither Bridges nor Poole had a driver's license
on their person and that a check revealed that Bridges had a suspended license
and an outstanding warrant from South Euclid. Butcher testified that he decided
to tow the car because neither party could produce the rental papers for the car.
Finally, he testified that he was required to perform an inventory prior to towing a
car. (*See id.* at 5-6.)

On June 21, 2001, the trial court denied Bridges's motion to suppress, finding that
Butcher had probable cause to stop and detain Bridges since he was speeding. The
court also found that the inventory search was legal. (*See id.* at 6.)

On June 21, 2001, Bridges pleaded guilty to the indictment of trafficking in
cocaine in an amount exceeding 1,000 grams, in violation of O.R.C. § 2925.03
and possession of cocaine exceeding 1,000 grams, in violation of O.R.C. §
2925.11. (*See id.* at 6.) On July 31, 2001, Defendant was sentenced to a
mandatory term of ten years on each underlying count, and to five years on the
Major Drug Offender specification, to run consecutively, totaling 25 years. (*See
id.* at 6.)

*Bridges v. Bradshaw*, 2007 WL 2571931, *1-2  (N.D. Ohio Aug. 31, 2007).  Subsequently,

Bridges sought and was denied a certificate of appeal by the Sixth Circuit.  (Doc. No. 5-6, Exh. 6

at Docket Entry 31, 33.)

## II.  Procedural History

### A.  Guilty Plea and First Sentence

In 2001, Bridges pled guilty to possession of drugs together with a major drug offender

3

("MDO") specification pursuant to Ohio Rev. Code ("O.R.C.") § 2925.11 and preparation of drugs for sale together with another MDO specification pursuant to ORC § 2925.03.  On July 31, 2001, after the court merged the two MDO specifications, Bridges was sentenced as follows:

> The Court imposes a prison term at Lorain Correctional Institution of 10 years as to each of counts 1 and 2 and 5 years on the major drug offender specifications (merged); all counts to run consecutive and consecutive to the major drug offender specification for a total of 25 years.

(Case No. 1:04cv0117, Doc. No 10-8.)

### B. Motion to Vacate Original Sentence

On May 30, 2008, Bridges, through counsel, filed a motion to vacate his original sentence based upon the court's failure to include a period of post-release control.  (Doc. No. 5, Exh. 8.) He also argued that the possession (O.R.C. § 2925.11) and trafficking (O.R.C. § 2925.03) offenses should have merged for sentencing purposes as they involved the same controlled substance (cocaine).  *Id*.  Prior to a ruling, on August 7, 2009, Bridges filed a motion to merge the two offenses for sentencing purposes.  *Id*. at Exh. 10.

On November 4, 2009, the trial court granted the motions finding that post-release control should have been included in the original judgment of conviction.  *Id*. at Exh. 12.  The court also found that Bridges was a "major drug offender," as at the plea hearing he admitted to trafficking or possessing at least one thousand grams of cocaine.  *Id*.  The court concluded as follows:

> At the [re-sentencing] hearing the state will either provide evidence that the drugs supporting the trafficking count are different from the drugs supporting the possession count, or the state will elect which count to merge into the other for purposes of sentencing.  If the possession and trafficking counts do not merge, the defendant's sentence will be in the range of ten to 30 years; [fn 9] if the counts do merge, the sentence will be in the range of ten to 20 years. [fn 10]  Postrelease control for five years will be a part of the prison sentence imposed at the hearing.
>
> [fn 9] The mandatory sentence of ten years each on each count, to run concurrent, and with no enhancement for the major drug offender specification, would result in a minimum sentence of ten years.  The mandatory ten years on each count, with a maximum enhancement of ten years for the MDO specification, all to run consecutive, would result in a maximum sentence of 30 years.
>
> [fn 10] A single ten-year sentence plus from zero to ten additional years for the MDO enhancement.

*Id*. at Exh 12 at 6.

On December 14, 2009, after the State conceded that the counts merged for sentencing

4

purposes, Bridges was re-sentenced to a twenty-year term (ten years on the trafficking offense, and a consecutive ten years on the MDO specification). *Id*. at Exh. 3. The sentencing entry, addressing credit for time served, the five-year term of post-release control, a $10,000 fine, and forfeiture of various items, was journalized on December 16, 2009. *Id.*

### B. Direct Appeal

On January 5, 2010, Bridges filed a *pro se* Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court"). On May 7, 2010, Bridges, through counsel, raised four assignments of error:

1. Defendant's rights under the Fifth and Fourteenth Amendments were violated when he was sentenced to an enhanced sentence on the major drug offender specification upon his resentencing.

2. Defendant was denied due process of law when the court, who was not the original judge, proceeded to resentence defendant to a greater sentence than that of the original judge.

3. Defendant's constitutional rights were violated when defendant was subjected to multiple punishments as a major drug offender.

4. Defendant was denied due process of law when the court added an additional forfeiture of items which differed from its oral pronouncement of sentence.

*Id.* at Exh. 15. On December 23, 2010, Bridges' re-sentencing was affirmed. *Id.* at Exh. 17.

On January 3, 2011, the State filed for reconsideration arguing that the court should reinstate the original sentence. *Id*. at Exh. 18. Bridges also filed an untimely motion for reconsideration. *Id.* at Exh. 19. On February 18, 2011, the state appellate court denied both motions. *Id.* at Exh. 21 at 1, 2.

On March 28, 2011, Bridges, through counsel, filed a Notice of Appeal with the Ohio Supreme Court, presenting four propositions of law:

1. A defendant's rights under the Fifth and Fourteenth Amendments are violated when a court sentences a defendant to an enhanced sentence on a major drug offender specification where his original sentence was void.

2. A defendant has been denied due process of law when a judge who was not the original sentencing judge, sentences defendant to a greater sentence than that of the original judge.

3. A defendant has been unconstitutionally sentenced to multiple

5

> punishments where he is multiply sentenced for possession of drugs and also a major drug offender involving the same drugs.
>
> 4.      A defendant has been denied due process of law when the court imposed additional forfeiture of items which differed from its oral pronouncement of sentence.

*Id*. at Exhs. 25 & 26.  On May 25, 2011, the appeal was dismissed as not involving any substantial constitutional question.  *Id*. at Exh. 27.

## C.      Federal Habeas Petition

On October 14, 2011, Bridges filed a Petition for Writ of Habeas Corpus, asserting the following grounds for relief:

> **GROUND ONE**: Fifth and Fourteenth Amendment.
>
> **Supporting Facts**: Petitioner's sentence was void.  However, when petitioner was resentenced by a different judge on a major drug offender specification as [sic] sentence was increased.
>
> **GROUND TWO**: Fifth Amendment.
>
> **Supporting Facts**: Petitioner was unconstitutionally sentence [sic] to multiple punishments where he was multiply sentenced for possession of drugs and also a major drug offender involving the same drugs or controlled substances.
>
> **GROUND THREE**: Fourteenth Amendment.
>
> **Supporting Facts**: Petitioner was denied due process of law when the court imposed additional forfeiture of items which differed from its oral pronouncement of sentence.

(Doc. No. 1.)

## III.  Exhaustion and Procedural Default

### A.      Exhaustion Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),(c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160

(6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

      **B.**     **Procedural Default Standard**

     Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2]  *Id.*

     Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In

---

    [2]In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

8

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 567 U.S. –, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker*, – S.Ct. –, 2012 WL 508160 (U.S. Jun. 11, 2012).

A state court's decision is contrary to clearly established federal law "if the state court

9

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ⸺ U.S. ⸺, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.  This is a very high standard, which the Court readily acknowledges. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

10

## V.  Analysis

### A.  Ground Three

Bridges contends that his re-sentencing hearing was unconstitutional because the judge failed to pronounce the forfeiture part of the sentence in open court.  (Doc. No. 6 at 13.) Additionally, he asserts that the court's subsequent journal entry providing for forfeiture was illegal and unconstitutional.[3]

Respondent argues that this ground is either defaulted or meritless.  She contends that, upon re-sentencing, the court resolved the merger issue and informed Bridges of post-release control sanctions, leaving the initial forfeiture order intact.  Respondent also argues that this claim is procedurally defaulted as Bridges did not include in his appeal the record of his initial sentence pertaining to the forfeiture.

The state appellate court denied Bridges' claim on direct appeal from the 2009 re-sentencing, as follows:

> {¶ 20} "4. Defendant was denied due process of law when the court added an additional forfeiture of items which differed from its oral pronouncement of sentence."

> {¶ 21} Bridges argues that the journal entry of sentence included a forfeiture order that was not stated in open court at the time of sentencing. A prior forfeiture order, which ordered forfeiture of the same items, was issued by the court on or about October 30, 2001. Because Bridges has failed to provide transcripts from the earlier proceedings, we must presume regularity in the proceedings and conclude that the forfeiture order was proper. *See State v. Pollard*, Cuyahoga App. No. 93002, 2010-Ohio-908, ¶ 13. Bridges's fourth assignment of error is overruled.

*State v. Bridges*, 2010 WL 5486840, *3 (Ohio App. 8th Dist, Dec. 23, 2010); 2010-Ohio-6359 at ¶¶ 20-21.

Respondent first contends that since Bridges did not provide the state appellate court with a transcript, this claim is procedurally defaulted.  (Doc. No. 5 at 34-35.)

Regarding default, the Sixth Circuit has recognized a default in the context of an Ohio App.R. 9 violation stating:

---

[3]In the court's journal entry, Bridges was ordered to forfeit $502 in U.S. currency, three pieces of luggage including the "Rugged Traveler" bag and the American Tourist luggage bag and all other items confiscated and owned by him and seized on May 11, 2001.

* * *  Under Ohio law, the appellant has the burden to provide "the appellate court with the record and exhibits that demonstrate the assigned errors." *Id.* at 910 (*quoting State v. Israel*, No. C-961006, 1997 WL 598396, at \*6 (Ohio Ct.App. Sept. 26, 1997)). *See* Ohio App. R. 9(B). Because of Gonzales' failure to comply with this rule, the Ohio Court of Appeals rejected Gonzales' arguments regarding his retrial following the mistrial. *State v. Gonzales*, 151 Ohio App.3d 160, 783 N.E.2d 903, 910 (2002).

The application of the *Maupin* analysis to the Ohio courts' rejection of Gonzales' claim due to his failure to present an adequate record on appeal reveals that this claim was procedurally defaulted. Ohio has a procedural rule that requires appellants to include materials relevant to their assigned errors in the record on appeal. Ohio App. R. 9(B). In Gonzales' case, the Ohio Court of Appeals enforced the procedural rule by rejecting Gonzales' claim due to his failure to follow this rule. Thus, the first and second *Maupin* factors are met. As for the third factor, a state procedural bar must be "firmly established and regularly followed" to be considered "adequate and independent." *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (*quoting James v. Kentucky*, 466 U.S. 341, 348-51, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984)). Ohio has regularly rejected claims due to appellants' failure to present an adequate record. *Volodkevich v. Volodkevich*, 48 Ohio App.3d 313, 549 N.E.2d 1237, 1237 (1989); *State v. Davidson*, No. 2005-P-0038, 2006 WL 763082, at \*4 (Ohio Ct.App. March 24, 2006); *State v. Estrada*, 126 Ohio App.3d 553, 710 N.E.2d 1168, 1170 (1998). Finally, Gonzales has made no argument that cause and prejudice existed for his failure to include relevant parts of the record on appeal. Thus, Gonzales has procedurally defaulted his claim that the Double Jeopardy Clause was violated because he was retried after a mistrial that was not manifestly necessary, and this Court may not reach the merits of this issue.

*Gonzales,* 290 Fed. App'x 799, 804-805 (6th Cir. Aug. 20, 2008).

Here, the state appellate court enforced Ohio App.R. 9(B)[4] when it applied the presumption of regularity, satisfying the first and second *Maupin* factors.  As to the third factor, that the state procedural bar must be "firmly established and regularly followed," *Gonzalez* is instructive as it cited Ohio cases that regularly rejected claims due to an appellant's failure to present an adequate record.  Lastly, Bridges has not demonstrated cause or prejudice to excuse the default. This claim is procedurally defaulted.

---

[4]Ohio App.R. 9(B) provides in relevant part as follows:

At the time of filing the notice of appeal the appellant, in writing, shall order from the reporter a complete transcript or a transcript of the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record and file a copy of the order with the clerk. * * * If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion.

Regarding the merits of ground three, although the court did not mention forfeiture as part of Bridges' 2009 sentence, the state appellate court noted that a prior forfeiture order was issued by the original judge in October, 2001. The docket reflects that this forfeiture was voluntarily entered into by Bridges. (Doc. No. 5-5 at 5-6.) It further reflects that the North Olmsted Police Department had sixty days to submit a report to the State indicating that the items had been disposed of. (Doc. No. 5-5 at 6.) The state appellate court applied the presumption of regularity when Bridges did not provide the transcript from the earlier proceeding and concluded that the original forfeiture order was proper. The state appellate court's decision was neither contrary to, nor an unreasonable application of clearly established law.

Respondent also asserts, assuming the forfeiture order to be improper, that this Court should conduct a harmless error analysis. In *Fry v. Pliler*, -- U.S. --, 127 S.Ct. 2321, 2328 (2007), the Supreme Court held that a federal habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the . . . standard set forth in *Brecht* [*v. Abrahamson*, 508 U.S. 619, 113 S.Ct. 1710, 123 L.Ed. 2d 353 (1993)]." *Fry*, 127 S.Ct. at 2328. The standard is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623 (citation omitted). "If, however, 'the matter is so evenly balanced' that the habeas court has 'grave doubt' as to the harmlessness of the error, it should 'treat the error, not as if it were harmless, but as it if affected the verdict." *Hereford v. Warren*, 536 F.3d 523, 533 (6th Cir. 2008) (*citing O'Neal v. McAninch*, 513 U.S. 432 (1995)). The standard also applies to constitutional errors in the sentencing process. *Stewart v. Erwin*, 503 F.3d 488, 501 n.5 (6th Cir. 2007).

Here, the result of the re-sentencing judgment would not have been different, especially in light of the fact that Bridges voluntarily entered into the forfeiture in 2001. He was not prejudiced when the re-sentencing judge failed to mention the voluntary forfeiture at the re-sentencing hearing, but later included it in the journal entry.

### B. Ground Two

Bridges contends that his sentence violated due process as it was based upon multiple punishments arising from possession of the same drugs. (Doc. No. 6 at 9-12.) He also asserts

that Ohio's sentencing statutes, including the MDO specification, were declared unconstitutional by the Ohio Supreme Court. *Id*. at 10.

The Double Jeopardy Clause protects against, *inter alia*, multiple punishments for the same offense.  In this context, "'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'"  *Garrett v. United States*, 471 U.S. 773, 793, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) (*quoting Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)); *see also Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).  "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature ... intended that each violation be a separate offense." *Garrett*, 471 U.S. at 778. In a single prosecution charging a defendant with violations of different statutes, if the statutes make clear that the legislature intended to impose cumulative punishments, the court is authorized to impose those punishments and the Double Jeopardy Clause is not violated. *Garrett*, 471 U.S. at 779; *see also Missouri v. Hunter*, 459 U.S. at 368-69; *Albernaz*, 450 U.S. at 344 ("Where [the legislature] intended ... to impose multiple punishments, imposition of such sentences does not violate the Constitution.")

The Supreme Court developed the "same elements" test in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180 (1932) to determine whether cumulative punishments were intended, holding that:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id*. at 304.  The *Blockburger* "same elements" test is a general rule of statutory construction, and as a result, when "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may imposed cumulative punishment under such statutes in a single trial." *Hunter*, 459 U.S. at 368-369.

14

In habeas review, however, this Court's role is a very limited one.  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005).  Therefore, "for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989); *see also Jackson v. Ray*, 292 F. App'x 737, 741 (10th Cir. 2008) ("In a habeas corpus proceeding under section 2254, a federal court should defer to a state court's interpretation of state law in determining whether an incident constitutes one or more than one offense for double jeopardy purposes."); *Dowdell v. Wilson*, 2007 WL 1299269, at *13 (N.D. Ohio May 2, 2007). The Sixth Circuit noted that in a § 2254 review "[a]s long as the state court has concluded that the legislature intended cumulative punishment, this court is bound by that conclusion." *Palmer v. Haviland,* 273 Fed. App'x 480, 486 (6th Cir. 2008) (*citing Banner v. Davis*, 886 F.2d 777, 782 (6th Cir. 1989)).

At both sentencing hearings, O.R.C. § 2925.03 provided, in pertinent part, as follows:

(A) No person shall knowingly do any of the following:

* * *

> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

* * *

> (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine.  The penalty for the offense shall be determined as follows:

* * *

(g) If the amount of the drug involved equals or exceeds one thousand grams of cocaine that is not crack cocaine or equals or exceeds one hundred grams of crack cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first

15

degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code.(g) If the amount of the drug involved equals or exceeds one hundred grams of cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.

O.R.C. § 2925.03(A), (C) (2001 & 2008).

The maximum term for a violation of Drug Trafficking is ten years.  Exh. 30 at ¶ 30.  *See also* O.R.C. § 2929.14(A)(1) ("For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years.")

"Major drug offender" is defined as follows:

"Major drug offender" means an offender who is convicted of or pleads guilty to the possession of, sale of, or offer to sell any drug, compound, mixture, preparation, or substance that consists of or contains at least one thousand grams of hashish; at least one hundred grams of crack cocaine; at least one thousand grams of cocaine that is not crack cocaine; at least two thousand five hundred unit doses or two hundred fifty grams of heroin; at least five thousand unit doses of L.S.D. or five hundred grams of L.S.D. in a liquid concentrate, liquid extract, or liquid distillate form; or at least one hundred times the amount of any other schedule I or II controlled substance other than marihuana that is necessary to commit a felony of the third degree pursuant to section 2925.03, 2925.04, 2925.05, or 2925.11 of the Revised Code that is based on the possession of, sale of, or offer to sell the controlled substance.

O.R.C. § 2929.01(W).[5]

At the time of both sentencings, O.R.C. § 2929.14(D)(3)(b) provided for a cumulative punishment of up to an additional one to ten years for a major drug offender conviction:

(3)(a) Except when an offender commits a violation of section 2903.01 or 2907.02 of the Revised Code and the penalty imposed for the violation is life imprisonment or commits a violation of section 2903.02 of the Revised Code, if the offender commits a violation of section 2925.03 or 2925.11 of the Revised Code and that section classifies the offender as a major drug offender and requires the imposition of a ten-year prison term on the offender, if the offender commits a felony violation of section 2925.02, 2925.04, 2925.05, 2925.36, 3719.07, 3719.08, 3719.16, 3719.161, 4729.37, or 4729.61, division (C) or (D) of section 3719.172, division (C) of section 4729.51, or division (J) of section 4729.54 of the Revised Code that includes the sale, offer to sell, or possession of a schedule I or II controlled substance, with the exception of marihuana, and the court imposing sentence upon the offender finds that the offender is guilty of a specification of the type described in section 2941.1410 of the Revised

---

[5]In 2001, the definition of  "major drug offender" was identical, except located at O.R.C. § 2929.01(X).

16

Code charging that the offender is a major drug offender, or if the court imposing sentence upon an offender for a felony finds that the offender is guilty of corrupt activity with the most serious offense in the pattern of corrupt activity being a felony of the first degree or is guilty of an attempted forcible violation of section 2907.02 of the Revised Code with the victim being under thirteen years of age and that attempted violation is the felony for which sentence is being imposed, the court shall impose upon the offender for the felony violation a ten-year prison term that cannot be reduced pursuant to section 2929.20 or Chapter 2967. or 5120. of the Revised Code.

(b) The court imposing a prison term on an offender under division (D)(3)(a) of this section may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years, if the court, with respect to the term imposed under division (D)(3)(a) of this section and, if applicable, divisions (D)(1) and (2) of this section, makes both of the findings set forth in divisions (D)(2)(b)(i) and (ii) of this section.

O.R.C. § 2929.14(D)(3)(a),(b).  (2001 & 2008).

The state appellate court found that the legislature intended cumulative punishments under

the MDO specification, as follows:

{¶ 14} Bridges's third assignment of error provides as follows: "3. Defendant's constitutional rights were violated when defendant was subjected to multiple punishments as a major drug offender."

{¶ 15} Bridges argues that he was sentenced under an unconstitutional statute for the major drug offender specification. In support of his argument, he cites *State v. Foster*, 209 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. As we have previously recognized, rather than eliminating penalty enhancements for repeat violent specifications, " *Foster* only severs the language requiring judicial fact-finding in R.C. 2929.14(D)(3)(b)." *State v. Marcano*, Cuyahoga App. No. 92449, 2009-Ohio-6458, ¶ 12; *Foster, supra* at ¶ 99.

{¶ 16} Bridges also argues that the major drug offender specification fails to contain a culpable mental state yet provides for an additional penalty. However, the specification was merely a penalty enhancement that attached to the underlying offense, and thus it does not include a specific *mens rea* of its own.

{¶ 17} Bridges further asserts that R.C. 2929.14(D)(1)(c) prohibits multiple punishments for felonies committed as part of the same act or transaction. The state correctly observes that the cited provision applies to firearm specifications. Bridges was not sentenced under that provision. Rather, he was sentenced under R.C. 2929.14(D)(3)(b), which authorizes the sentence imposed.

{¶ 18} We also reject Bridges's argument that the major drug offender sentence violates double jeopardy. *See State v. Midcap*, Summit App. No. 22908, 2006-Ohio-2854, ¶ 12; *State v. Gonzales*, 151 Ohio App.3d 160, 2002-Ohio-4937, 783 N.E.2d 903, ¶ 40 (both cases rejecting the same argument).

*State v. Bridges*, 2010 WL 5486840, *2-3 (Ohio App. 8ᵗʰ Dist. Dec. 23, 2010).

As the state appellate court concluded, double jeopardy was not implicated in Bridges'

case.  The Ohio Legislature explicitly provided that a sentence for MDO specifications should be

cumulative.

Bridges also contends that since the Ohio Supreme Court ruled that the sentencing statutes are unconstitutional, he is entitled to the benefit of that ruling.  (Doc. No. 6 at 10.)  In *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), the court severed unconstitutional portions of Ohio's sentencing statutes, giving trial court judges full discretion to impose any sentence within the statutory range without making any findings of fact.

As set forth above, included in Ohio's definition of a MDO is "an offender who is convicted of or pleads guilty to the possession of, sale of, or offer to sell any drug, compound, mixture, preparation, or substance that consists of or contains ... at least one hundred grams of crack cocaine; at least one thousand grams of cocaine that is not crack cocaine ..."  O.R.C. § 2929.01(W).  The record is clear that the designation of Bridges as a "MDO" required no additional findings of fact to be made by the trial court.  Bridges pled guilty to both possessing and trafficking in at least one thousand grams of cocaine.  He also pled guilty to the MDO specifications.  As a result, he met the statutory definition of a MDO, and the re-sentencing court imposed the underlying mandatory ten-year sentence and an additional ten years for the MDO specification.  O.R.C. § 2925.14(D)(3)(a).  Thus, the state appellate court did not unreasonably apply federal law by determining that the trial court's sentencing of Bridges as a MDO did not violate the Sixth Amendment.  *See Rita*, 127 S.Ct. at 2466; *Gonzales v. Wolf*, 290 Fed. App'x 799, 812 (6th Cir. 2008); *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 1, 845 N.E.2d 470, 494 (Ohio 2006) (holding that imposing punishment for MDO status complied with Sixth Amendment as long as the judge did not impose additional punishment above the mandatory ten-year sentence).

Regarding Bridges' argument that the Ohio Supreme Court declared the MDO sentencing statute unconstitutional, the *Foster* Court severed certain sections of Ohio's sentencing statute, stating:

> The following sections, because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum prison terms,

> and 2929.14(E)(4), which requires judicial findings for consecutive terms. R.C. 2953.08(G), which refers to review of statutory findings for consecutive sentences in the appellate record, no longer applies. We also excise R.C. 2929.14(D)(2)(b) and (D)(3)(b), which require findings for repeat violent offenders and major drug offenders.

*Foster*, 109 Ohio St.3d at 29, 845 N.E.2d at 497.

Indeed, before *Foster* revised Ohio's sentencing law, trial courts could not impose maximum sentences (or any sentence above the presumptive minimum) without finding certain facts by a preponderance of the evidence. *See* O.R.C. § 2929.14(B)-(C); *Ruhlman v. Brunsman,* 664 F.3d 615, 621 (6th Cir. 2011). Subsequent to *Foster*, however, trial courts may impose any sentence within the statutory range without any specific finding of fact. *Id*. The state appellate court's conclusion that *Foster* severed only the language requiring judicial factfinding in O.R.C. §2929.14(D)(3)(b) was neither contrary to nor an unreasonable application of federal law. It is not this Court's function to serve as a substitute for a state appeal. Ohio was free to cure an unconstitutional statute by severing the offending sections in their entirety or excising only portions. Ohio courts have concluded that the latter was done. Either way, the federal constitutional violation *Foster* addressed would be cured leaving nothing to be considered on this subject in habeas review. Ground three is without merit.

### C. Ground One

Bridges contends that his constitutional rights were violated when the re-sentencing judge (different than the original judge), after merging the two offenses, imposed a longer term (by five years) on the MDO specification than he received at his first sentencing hearing. Bridges asserts that the increased term was the product of vindictiveness by the re-sentencing judge. (Doc. Nos. 1, 6 at 2-9.) Specifically, he argues that the vindictiveness is based upon the judge not having the transcript from the original proceedings and not following the statutory criteria of O.R.C. § 2929.19(B).[6] (Doc. No. 6 at 7.) Bridges also asserts that the court should have considered his

---

[6]O.R.C. § 2929.19(B)(1) provides in pertinent part as follows:

> At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to

19

interim rehabilitation when imposing the new sentence.  *Id*. at 7-9.

Respondent, relying on a recent Sixth Circuit case, *Goodell v. Williams*, 643 F.3d 490, 496-502 (6th Cir. Jul. 11, 2011), which discussed two United States Supreme Court decisions, *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072 (1969) and *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976 (1986), contends that the state appellate court reasonably applied the federal standard in finding no vindictiveness by the re-sentencing court.  (Doc. No 5 at 15-24.)

A court is not constitutionally barred from imposing a greater sentence upon a defendant who is being re-sentenced after a successful appeal.  *North Carolina v. Pearce*, 395 U.S. 711, 719-723 (1969).  Rather, a court may not impose a greater sentence on remand out of vindictiveness.  *Id.* at 725.  It is not the increase, but the retaliatory motive that violates due process.  *Id*.  As a protection against an increase due to vindictive intent, the *Pearce* Court imposed a presumption of vindictiveness when a sentence is increased after a successful appeal.  *Id*. at 726.

Subsequently, the Supreme Court curtailed the reach of the *Pearce* presumption.  In *Texas v. McCullough*, 475 U.S. 134, 140 (1986), the Court found that "[t]he presumption [of vindictiveness was] inapplicable because different sentencers assessed the varying sentences that [the defendant] received."  The *McCullough* Court explained that where the sentence is imposed by a different sentencer, it cannot be said that an increase has truly taken place.  *Id*.; *Colten v. Kentucky*, 407 U.S. 104 (1972) (finding the *Pearce* vindictiveness presumption inapplicable where the defendant challenged his conviction in a two-tier system and the second court, which imposed a greater sentence, was not the same court that imposed the earlier sentence);[7] *cf. Chaffin v. Stynchcombe*, 412 U.S. 17, 27 (1973) (finding that presumption of vindictiveness

---

division (A) of this section, and, if one was prepared, the presentence investigation report . . . and any victim impact statement . . . .

[7]In *Colten v. Kentucky*, the defendant was convicted of a misdemeanor.  407 U.S. 104. Kentucky had a two-tier criminal justice system, under which a defendant convicted of a misdemeanor in an inferior court, if dissatisfied with the outcome, could have a *de novo* trial in a court of general criminal jurisdiction.  *Id*.

20

should not be extended to jury sentencing as "the jury, unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication").  The presumption also did not apply when a judge issues a life term following a trial conducted on remand from a successful appeal of an invalid guilty plea and thirty-year sentence.  *Alabama v. Smith*, 490 U.S. 794, 799 (1989).  The *Smith* Court noted that the *Pearce* presumption is limited, as follows:

> Because the *Pearce* presumption "may operate in the absence of any proof of an improper motive and thus ... block a legitimate response to criminal conduct," *United States v. Goodwin, supra,* 457 U.S., at 373, 102 S.Ct., at 2488, we have limited its application, like that of "other 'judicially created means of effectuating the rights secured by the [Constitution],' " to circumstances "where its 'objectives are thought most efficaciously served,'" *Texas v. McCullough, supra,* 475 U.S., at 138, 106 S.Ct., at 979, *quoting Stone v. Powell*, 428 U.S. 465, 482, 487, 96 S.Ct. 3037, 3046, 3049, 49 L.Ed.2d 1067 (1976). Such circumstances are those in which there is a "reasonable likelihood," *United States v. Goodwin, supra,* 457 U.S., at 373, 102 S.Ct., at 2488, that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness, *see Wasman v. United States*, 468 U.S. 559, 569, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).

*Smith*, 490 U.S. at 799-800.

The refusal to extend the presumption to a case with two different sentencers is consistent with the goal of balancing the need to protect a defendant's Constitutional rights and the need to permit judicial discretion in legitimately punishing criminal acts.  *See Smith*, 490 U.S. at 799.  A second, detached sentencer "will have no personal stake in the prior conviction and no motivation to engage in self-vindication." *Chaffin*, 412 U.S. at 27.  The presumption is fundamentally inapplicable when the defendant faces a different judge on remand for the very reason that "different sentencers assessed the varying sentences [the defendant] received.  In such circumstances, a sentence 'increase' cannot truly be said to have taken place." *McCullough*, 475 U.S. at 140.  The so-called increase can no more be blamed on a vindictive second sentencer then it can be blamed on an overly lenient first sentencer.  *Colten*, 407 U.S. at 117.

As recently summarized by the Sixth Circuit, "*McCullough* teaches that the principle to be gleaned from *Pearce*, viewed in light of numerous intervening Supreme Court decisions, is that the presumption of vindictiveness applies where the circumstances demonstrate a need to protect

against such.  Or, in the terms used in *Smith*, 490 U.S. at 799-800, the presumption applies only where the circumstances give rise to a 'reasonable likelihood' that the sentence increase was the product of judicial vindictiveness."  *Goodell v. Williams*, 643 F.3d 490, 500 (6th Cir. 2011).  The *Goodell* Court noted that this principle is "clearly established" in the Sixth Circuit by other prior precedents.  *See Gonzales v. Wolfe*, 290 Fed. App'x. 799, 812-813 (6th Cir. 2008) (following *McCullough* and holding presumption not warranted where different judge imposed sentence after defendant's successful appeal).  In *Gauntlett v. Kelley*, 849 F.2d 213 (6th Cir. 1988), the Sixth Circuit also applied *McCullough's* teaching as clarifying and defining the scope of *Pearce*. "[W]hen the sentences are imposed by different sentencers, the presumption does not apply because there has been no real 'increase' in the sentence."  *Id*. at 217.

The state appellate court concluded that there was no abuse of discretion by the re-sentencing court:

> {¶ 6} "1. Defendant's rights under the Fifth and Fourteenth Amendments were violated when he was sentenced to an enhanced sentence on the major drug offender specification upon his resentencing."
>
> {¶ 7} "2. Defendant was denied due process of law when the court, who was not the original sentencing judge, proceeded to resentence defendant to a greater sentence than that of the original judge."
>
> {¶ 8} When a judgment is declared void, the effect "is as though such proceedings had never occurred; the judgment is a mere nullity and the parties are in the same position as if there had been no judgment." *Romito v. Maxwell* (1967), 10 Ohio St.2d 266, 267-268, 227 N.E.2d 223. Thus, when a court fails to impose a mandatory term of postrelease control, the sentence is void and the court is required to resentence the offender "as if there had been no sentence." *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 13. "During a de novo resentencing, * * * 'the trial court is free to impose the identical sentence that was originally imposed, or a greater or lesser sentence within its discretion * * *.'" *State v. Jackson*, Cuyahoga App. No. 92365, 2009-Ohio-4995, ¶ 9, *quoting State v. Cook*, Cuyahoga App. No. 91487, 2008-Ohio-4246, ¶ 10.
>
> {¶ 9} In this case, it is clear that the trial court conducted a *de novo* sentencing hearing and did not merely defer to the original judge's decision. The court heard arguments from counsel, considered the facts and history of the case, including the original sentence, and determined that a ten-year sentence for the major drug offender specification was appropriate.
>
> {¶ 10} Because the sentence was imposed by a different judge than the original sentencing judge, there is no presumption of vindictiveness. *See State v. Cousin*, Cuyahoga App. No. 86120, 2005-Ohio-6722, ¶ 7-8. Moreover, the record does not reflect that the harsher sentence was the product of judicial vindictiveness or that the judge was predisposed to a particular sentence. In deciding the sentence that was

imposed, the trial court considered all of the evidence before it and the purposes and principles of sentencing. The sentence was within the statutory range, and we find no abuse of discretion by the trial court.

{¶ 11} Bridges also claims that because he had partially served his sentence, the sentence could not be increased by the court. However, this is not a case where a valid sentence is being increased. Rather, the original sentence was vacated and a *de novo* sentencing hearing was held at which Bridges received a newly imposed sentence with credit for time served.

{¶ 12} Insofar as Bridges asserts that a maximum sentence could not be imposed under the plain language of R.C. 2929.14(D)(3)(a) because he was not also guilty of engaging in a pattern of corrupt activity, this court rejected a similar argument in *State v. Schneider*, Cuyahoga App. No. 93128, 2010-Ohio-2089, ¶ 17-18 (rejecting such an interpretation of the statute).

*State v. Bridges,* 2010 WL 5486840, *1-2 (Ohio App. 8th Dist., Dec. 23, 2010).

In the instant matter, Bridges was re-sentenced by a different judge and no presumption of vindictiveness applies. Bridges, therefore, must demonstrate actual vindictiveness on the part of the re-sentencing judge. In the Traverse, he attempts to raise several arguments showing actual vindictiveness, relying on Ohio case law and U.S. Supreme Court cases applying federal sentencing laws. Bridges contends that the re-sentencing court did not give adequate reasons for his sentence, citing an Ohio case that the re-sentencing judge cannot "parrot" the first judge's sentence. *See State v. Godfrey*, 183 Ohio App.3d 344, 916 N.E.2d 1138 (Ohio App. 1st Dist. 2009). Bridges also relies on *Wasman v. United States*, 468 U.S. 559, 570-71 (1984) for support that a court cannot increase a subsequent sentence if there is no additional adverse information justifying the increase, as well as *U.S. v. Benz*, 282 U.S. 304 (1931) to support his argument that a sentence cannot be constitutionally increased. Bridges' arguments, however, are meritless. Courts have held that double jeopardy is not a bar to the imposition of a more severe punishment upon resentencing a defendant who was successful in having his original sentence set aside. *Sullens v. United States*, 409 F.2d 545 (5th Cir. 1969); *Murphy v. Massachusetts*, 177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711 (1900); *Tipton v. Baker*, 432 F.2d 245 (10th Cir. 1970); *Pearce*, 395 U.S. at 719-723.

In addition, Bridges asserts that the re-sentencing court did not consider his post-sentencing behavior, relying on *Pepper v. U.S.*, 131 S.Ct. 1229 (2011). The *Pepper* Court noted that Congress has expressly instructed district courts to consider at sentencing any postsentencing

23

rehabilitation, which may "critically inform a sentencing judge's overarching duty under §
3353(a) to impose a sentence sufficient, but not greater than necessary to comply with the federal
sentencing purposes." *Id.* at 1242.  However, this instruction is directed at federal courts for
federal sentencings, not at habeas review of state court sentences.  Bridges does not cite any
habeas cases relying on *Pepper*, and this Court's research has not found any.

Bridges also relies upon *Fiore v. White*, 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629
(2001).  That case, however, merely reiterates the maxim that the "Due Process Clause of the
Fourteenth Amendment forbids a State to convict a person of a crime without proving the
elements of that crime beyond a reasonable doubt."

In the instant matter, the re-sentencing court, after hearing the arguments of the parties,
expressly stated that it considered the statutory purposes and principles of sentencing and
ordered a prison term of 20 years (10 years on the principle offense and 10 years on the MDO
specification, to run consecutively).  (Doc. No. 5-4, Exh. 4 at 35.)  *See McCullough*, 475 U.S. at
140 (reading *Pearce* as requiring no more than "an on-the-record, wholly logical, non-vindictive
reason for the sentence.")  The re-sentencing court indicated that Bridges was re-sentenced for
the same conduct as eight years earlier at the first sentencing, but also indicated that it
considered all the evidence and the purposes and principles of the sentencing laws before its
pronouncement.  (Doc. No. 5-4 at 32.)  Bridges has not presented any evidence even remotely
suggesting vindictiveness by the re-sentencing judge.  As such, the state appellate court's
decision was neither contrary to, nor an unreasonable application of clearly established federal
law.

## VI.  Conclusion

For the foregoing reasons, it is recommended that Bridges' Petition be denied.


                                        s/ Greg White
                                        United States Magistrate Judge

Date:   August 2, 2012

24

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).